**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 1:15-cv-02785-RM-NYW

STEVEN LEE BRANDT, an individual,
JAMES CLAY WALTERS, an individual, and
COLORADO BOX COMPANY, INC., a Colorado corporation,

        Plaintiffs,

v.

VON HONNECKE, an individual,
CHASE HONNECKE, an individual, and
S & H SHEET METAL, INC., a Colorado corporation,

        Defendants.

---

## ORDER ON CLAIM CONSTRUCTION

---

This matter is before the Court on the parties' request for construction of certain disputed claim terms contained in United States Patent No. 8,999,029 entitled "Furnace Filter Box and Method of Assembly" (the "'029 Patent"). The matter is now ripe for consideration. Based on the record, and the applicable statutes, rules, and case law, the Court construes certain claims in the '029 Patent as set forth below.

## I.      BACKGROUND

The '029 Patent concerns a furnace filter box, which is made with various panels (two sides, front, back, and bottom) and other pieces. The filter box may be shipped disassembled and its height can be reduced to fit under a furnace. Plaintiffs Steven Brandt and James Walters are the inventors of the furnace filter box and method of assembly covered by the '029 Patent. They filed their patent application on November 2, 2012, and the '029 Patent was issued April 7, 2015.

They are now the former owners of the '029 Patent, having transferred their interest in the patent to the current owner, Plaintiff Colorado Box Company, Inc.

As stated in the '029 Patent, Plaintiffs' product is "[a] furnace filter box for mounting next to an intake air opening in a furnace." (Abstract.) According to the '029 Patent, as relevant to this case, a primary object of the invention is to provide a furnace filter box "that is adaptable to various sizes and types of air conditioning and heating furnaces." (Summary of the Invention (hereafter, "Summary"), col. 1, ll. 33-36.[1]) Another objective is the furnace filter box can be "adapted for holding" different size and width of furnace filters. (Summary, col. 1, ll. 44-46.)

On December 22, 2015, Plaintiffs filed suit against Defendants. Plaintiffs' Second Amended Complaint ("SAC") alleges Defendants' "Return air filter box" infringes "at least" claims 1, 3, 5, and 17 of the '029 Patent. (*See* ECF No. 42.) Plaintiffs assert three claims for relief: direct patent infringement under 35 U.S.C. § 271(a); inducing infringement under 35 U.S.C. § 271(b); and contributory infringement under 35 U.S.C. §271(c). (ECF No. 42.)

By Scheduling Order in Patent Case entered April 4, 2016 (ECF No. 29), as amended by Order dated June 28, 2016 (ECF No. 56), Plaintiffs' Infringement Contentions were due by July 21, 2016; the parties' Joint Disputed Claim Terms Chart was due by December 8, 2016; and the parties' opening Claim Construction Briefs were due by January 13, 2017. After the parties served or filed such documents, the Court held a claim construction or *Markman* hearing[2] on April 17, 2017. Thereafter, the Court allowed the parties to submit supplemental briefs. The parties' papers and oral arguments raised not only how disputed claim terms should be construed but also which claim terms in what claims should be construed. In order to address the former, the Court must first address the latter. The Court addresses both below.

---

[1] For reference, column is abbreviated to "col." and lines to "ll."
[2] *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

## II.    LEGAL STANDARDS

### A.  Local Patent Rules

As relevant here, D.C.COLO.LPtR 4(b) provides that a party who serves infringement contentions shall also serve a claim chart for each accused product.  That claim chart is required to identify each claim of each patent in suit that is allegedly infringed by the accused product.  D.C.COLO.LPtR 4(b)(1).  Thereafter, the parties are required to file a Joint Disputed Claims Terms Chart which identifies "the disputed claim terms and phrases and each party's proposed construction."  D.C.COLO.LPtR 14.  The deadlines for the parties to comply with these rules are set forth in the Patent Scheduling Order.  *See* D.C.COLO.LPtR 4 & 14.

### B.  Claim Construction

Determining infringement is a two-step process.  First, the claims at issue must be properly construed to determine their scope and meaning.  Then, second, the claims so construed are compared to the accused device or process.  *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129 (Fed. Cir. 2011).  At issue before the Court is the first step, which it determines as a question of law.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).

*Intrinsic Evidence.*  "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  When construing claim terms, the courts look to, and primarily rely on, intrinsic evidence, which includes the claims themselves, the specification, and the prosecution history of the patent.  *Sunovion Pharm., Inc. v. Teva Pharm. USA, Inc.*, 731 F.3d 1271, 1276 (Fed. Cir. 2013).  "[T]he words of a claim

'are generally given their ordinary and customary meaning.'" *Phillips*, 415 F.3d at 1312 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *see also Sunovion,* 731 F.3d at 1276. This is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313.

That "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but [also] in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. This is because the claims do not stand alone. Instead, "they are part of a fully integrated written instrument,…consisting principally of a specification that concludes with the claims. For that reason, claims must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (citation and quotation marks omitted).

In addition to the words of the claims themselves and the remainder of the specification, courts should also consider the patent's prosecution history, if it is in evidence, to construe the invention. *Phillips*, 415 F.3d at 1317. The prosecution history, also called the file wrapper, "consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. However, as the prosecution history "often lacks the clarity of the specification," it is "less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317.

***Extrinsic Evidence.*** Courts are also authorized "to rely on extrinsic evidence, which consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317 (citation and

quotation marks omitted). Such evidence, however, is less significant than intrinsic evidence in construing disputed claim terms. *Phillips*, 415 F.3d at 1317.

## III. ANALYSIS

### A. The Claims and Claim Terms at Issue

The parties dispute which claims as well as which claim terms and phrases (collectively, "terms") are at issue. Defendants contend that claims not alleged in the SAC are not at issue while Plaintiffs argue that those claim terms disclosed in the Parties' Chart and Tables (as hereafter defined) control and Defendants should not be allowed thereafter to present new terms or modify existing terms. On this record, the Court agrees with Plaintiffs.

The Court starts first with Defendants' argument that only claims 1, 3, 5, and 17 are at issue as they contend only those claims are alleged in the SAC. Contrary to Defendants' argument, the record shows the SAC alleges that "at least" claims 1, 3, 5, and 17 of the '029 Patent are at issue. Thus, the SAC did not limit the claims to *only* those claims. Moreover, the record shows the parties agreed that additional claims are at issue.

Specifically, in accordance with the Patent Local Rules, Plaintiffs served their Initial Infringement Contentions identifying the claims infringed as claims 1-6, 8-9, 17-18, and 20. (ECF No. 69-4.) That was followed by the parties' Joint Disputed Claim Terms Chart (the "Chart"), again in accordance with the Patent Local Rules. The Chart identified nine claims (1-6, 8-9, and 17) involving 20 claim terms which the parties contended require construction.[3] (ECF No. 63.) In addition, the parties submitted two tables (collectively, the "Tables") in which claims 18 and 20 were added as those at issue. (ECF Nos. 63-1, 64.) Thus, based on these

---

[3] Plaintiffs identified nine terms contained in claims 1, 2, 4, 5, 6, 8, and/or 17, while Defendants identified 11 terms contained in claims 1, 2, 3, 4, 6, 8, 9, and/or 17. (ECF No. 63, page 2.)

As used in this Order, the page numbers referenced are those assigned to the document by the District Court's CM/ECF system.

papers, the following claims have been *jointly* identified and agreed as being at issue:  claims 1-6, 8-9, 17-18, and 20.  Accordingly, as the SAC did not limit the claims at issue to being 1, 3, 5, and 17, and the parties jointly agreed to the additional claims, the Court finds that claims 1-6, 8-9, 17-18, and 20 are at issue.[4]

Next, the Court addresses which claim terms are at issue.  Here, the parties' Chart and Tables identified specific terms[5] for construction.  As Plaintiffs contend, Defendants' opening Claim Construction Brief adds at least one new term ("hinged to a top of the front panel" (claim 3)) and modifies existing terms to be construed (*e.g.*, "mounted" instead of "mounted to" (claim 1)).   After agreeing to what terms are to be construed, the Court finds Defendants may not thereafter modify or add to such terms.[6]  *See Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1324-5 (Fed. Cir. 2016) (affirming district court's discretion in applying local rules to preclude party from arguing infringement under the doctrine of equivalents).  Accordingly, as necessary, the Court will construe only those claims and terms set forth in the parties' Chart and/or Tables.

## B.  The Construction of the Claim Terms at Issue

Plaintiffs' positions as to the construction of the various disputed terms are generally consistent but Defendants' arguments have substantially vacillated leaving their position sometimes unclear.  For example, in the Tables, Defendants changed their proposed construction of "right angle flanges" (claims 6, 8, 9) from "protruding edges to attach the rails" to "protruding edges for fastening the rails."  (*Cf.* ECF No. 63-1, page 4 *with* ECF No. 64, page 21.)  Similarly,

---

[4] Indeed, Defendants' opening Claim Construction Brief construes terms in all claims except claim 2 and, inexplicably, claim 5 (even though it is specifically identified in the SAC).  Defendants argue claim 2 is not at issue as it is not alleged in the SAC; however, Defendants ignore the fact that *they* also raised claim 2.  (*Cf.* ECF No. 65, page 18 *with* ECF No. 63, page 2.)

[5] Claims 17-18 and 20 are method claims.  In addition to a dispute over terms contained in claim 17, the parties also dispute whether claims 17-18 and 20 must be performed in sequence.

[6] At least not without leave of the court upon motion filed showing sufficient grounds, after conferral with opposing parties.

as discussed below, Defendants' proposed constructions changed further during the *Markman* hearing and, in some instances, Defendants ultimately agreed with Plaintiffs' proposed construction of the disputed term. Regardless, the Court has considered all arguments, and construes the disputed terms as follows.

### 1. *"adapted for mounting"* (Claims 1, 17)

Plaintiffs propose the term be construed as "modified and placed for use in combination with a furnace," to which Defendants agreed during the *Markman* hearing. Accordingly, the Court accepts such construction.[7] (ECF No. 63-1, page 1; No. 64, page 1.)

### 2. *"adapted for receiving"* (Claims 1, 17)

Plaintiffs propose the term be construed as "modified to accept," to which Defendants agreed during the *Markman* hearing. Accordingly, the Court accepts such construction. (ECF No. 63-1, page 1; No. 64, page 2.)

### 3. *"attached to/attaching"* (Claims 1, 4, 17)

Plaintiffs propose the term be construed as "coupled by joining together," to which Defendants agreed during the *Markman* hearing. Accordingly, the Court accepts such construction. (ECF No. 63-1, page 1; No. 64, page 3.)

### 4. *"mounted to"* (Claim 1)

Claim 1 provides the furnace filter box is comprised of, among other things, "a pair of horizontal furnace filter rails mounted to an inside of an upper portion of the first and second side panels…." (Col. 4, ll. 53-54.) Plaintiffs propose the term "mounted to" be construed as

---

[7] The Court recognizes that, in their opening Claim Construction Brief, Plaintiffs proposed "modified for use in combination with a furnace" to which Defendants agreed in their Reply. (ECF No. 67, page 33; No. 72, page 8.) Nonetheless, the Court views the parties' statements at the *Markman* hearing, subject to the supplemental briefs the Court allowed, as a final expression of their positions.

"position on to" or "positioned onto,"[8] as it is allegedly consistent with the use of

mounted/mounting in the specification. Defendants initially proposed the term be construed to

mean "securely placed on."[9] Subsequently, Defendants argued the term *to be* construed is

"mounted,"[10] the position they also took during the *Markman* hearing. That term, Defendants

assert, should be construed as "set on" or "set upon" – as something other than "attached."

As stated, the Court will construe those terms set forth in the Chart or Tables and

"mounted" is not such a term. "Mounted to," however, is such a term; therefore, that is the term

the Court will construe.[11]

"Mounted to," in the context of the claim, does not simply refer to the filter rails as being

"positioned on to" (or "onto") the upper side of the two side panels as Plaintiffs assert. Instead,

such filter rails which are "mounted to" the side panels must have the ability to "hold" the

furnace filter, showing something more than "positioning" is required.[12] This construction is

consistent with the use of the term in claim 10 and the specification, also in connection with filter

rails (*e.g.*, col. 1, ll. 51-54; col. 5, ll. 41-43). It is also consistent with the use of the term

"positioned" in the '029 Patent. In such instances, the word "positioned" refers to the placement

of the object at issue. (*See, e.g.,* col. 1, ll. 7-9 (furnace filter box is "positioned next to an air

intake duct"); col. 2, ll. 31-33 (describing Fig. 6 as illustrating S-lock channels "positioned for

attachment" to the filter box panels).)

On the other end of the spectrum, construing the term as "securely placed on" (as initially

advocated by Defendants) or "firmly or permanently affixed" (as Plaintiffs appeared to argue

---

[8] ECF No. 63-1, page 1; No. 64, page 4; No. 67, page 18.
[9] ECF No. 63-1, page 1; No. 64, page 4.
[10] ECF No. 65, pp. 13-14; No. 72, pp. 6-7.
[11] The Court acknowledges that consideration of the use of the words "mount" or "mounting" in the '029 Patent may nonetheless assist in construing the term at issue.
[12] For the same reason, more than "set upon" is required, to the extent Defendants are asserting that "mounted to" should also be construed as "set upon."

during the hearing) seeks too much more than "positioning," *i.e.*, "mounted to." Contrary to Plaintiffs' contention, the prosecution history does not show support that the filter rails must be so affixed. (*See* ECF No. 69-3, pp. 37-46.) According, the Court construes the term to mean "positioned and held in place on" ("a pair of horizontal furnace filter rails [positioned and held in place on] an inside of an upper portion of the…side panels").

**5.** ***"adapted for holding"*** **(Claims 1, 17)**

Claim 1 provides the furnace filter box is comprised of, among other things, a pair of furnace filter rails "adapted for holding the furnace filter next to an enlarged open top in the filter box…." (Col. 4, ll. 55-56.) Claim 17 identifies a method for assembling the furnace filter box, where the steps include "mounting" a pair of furnace filters which are "adapted for holding the furnace filter next to an enlarged open top in the filter box…." (Col. 6, ll. 38-39.) Plaintiffs propose the term "adapted for holding" be construed as "modified to accept," which is the same construction for the term "adapted for receiving." Both terms are found in claims 1 and 17. Defendants contend that, under the law, the two claim terms should have different constructions; they propose the term be construed as "designed to retain." The Court agrees with Defendant in that it finds the claims and rest of the specification show the two terms have different constructions. The Court, however, rejects both parties' construction of the disputed term.

The Court begins with the words of the claims themselves "as an ordinary artisan would have understood them at the time of the invention." *Wi-LAN USA, Inc. v. Apple Inc.*, 830 F.3d 1374, 1381 (Fed. Cir. 2016). The disputed claim term – and the agreed upon claim term "adapted for receiving" – both appear in claims 1 and 17. In both claims, the air intake opening in the furnace filter box is "adapted for receiving an end of the air intake duct" while the furnace filter rails are "adapted for holding the furnace filter next to an enlarged open top in the filter

box…." When viewed in context, "adapted for receiving" and "adapted for holding" are not the same or equivalents. As the parties agreed, "adapted for receiving" is "modified to accept." The use of "modified to accept" in lieu of "adapted for holding" in the claim term, however, shows the '029 Patent does not support Plaintiffs' construction. (*E.g.,* claim 1: "the furnace filter rails [modified to accept] the furnace filter next to an enlarged open top in the filter box….") Nor does it support Defendants' construction ("designed to retain"), especially since a primary objective of the invention is that the furnace filter box is "adaptable" – *i.e., modifiable* – to difference size and types of air conditioning and heating furnaces.

Unless there is evidence to the contrary, under a "basic tenet of claim construction" it is "presume[d] that different words in a claim have different meanings." *Cormack v. United States*, 119 Fed. Cl. 63, 76 (2014); *see also CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.") Plaintiffs fail to present sufficient evidence to overcome this presumption. For example, Plaintiffs argue the two terms are synonymous because "they are used in the specification when discussing the furnace *filter rails* holding or receiving the furnace filter." (ECF No. 67, page 36 (emphasis added).) That, however, is incorrect. (*E.g.*, Abstract ("*filter box* is adapted for receiving a furnace filter…" (emphasis added)); claims 1, 10, 17 ("*air intake opening* adapted for receiving an end of the air intake duct" (emphasis added)).) The claims and rest of the specification show the furnace filter rails are always stated to be "adapted for holding" the furnace filter(s) "next to" an open top in the filter box. (Abstract; Summary, col. 1, ll. 51-54; claims 1, 10, 17.) Thus, the intrinsic evidence shows that while the word "adapted" may be used synonymously in both claim terms, "holding" and "receiving" may not. Instead, it indicates

"receiving" is distinct from "holding." The '029 Patent as a whole shows "holding" should be understood to mean keeping the filter in place. *See Phillips*, 415 F.3d at 1313 (claim term should be read not only in the context of the particular claim in which the disputed term appears, but also in the context of the entire patent, including the specification).[13]

Based on the foregoing, the Court construes the term "adapted for holding" to mean "modified to keep in place."

### 6. *"a vertical air intake opening"* (Claim 1)

Claim 1 states that the furnace filter box is comprised of "a vertical air intake opening" in the first side panel of the filter box. (Col. 4, ll. 45-46, 58-59.) Plaintiffs propose the term be construed as "an opening for allowing air to pass vertically through the furnace filter box and into the furnace." Defendants propose (1) the term be taken out as it is not in issue; and (2) that it be construed as a "cut hole in vertical side sheet." As Plaintiffs have not withdrawn this claim term, and Defendants have not shown how or why it is not in issue, the Court will consider the term at issue and disputed. Based on the record, the Court perceives the dispute is whether that term relates to the air flow (*i.e.,* vertical air) or to the orientation of the opening (*i.e.*, vertical opening – an opening in a vertical panel).

Claim 1 describes the orientation of the furnace filter box panels directionally, *i.e.,* as being comprised of "a vertical front panel" attached to "vertical sides" of two side panels, a "vertical back panel," and "a horizontal bottom panel." It then goes on to state the furnace filter box is also comprised of "a vertical air intake opening in the first side panel,...."[14] Read in context, the "*vertical* air intake opening" (emphasis added), like the "vertical sides," refer to the

---

[13] In only one instance is "adapted for holding" used with something other than filter rails. There, in the Summary, the claim term is also used with the furnace filter box as "adapted for holding one or more different size and width of furnace filters...." (Summary, col. 1, ll. 44-47.)

[14] This same language appears in claim 10.

orientation of the side panel.  This is consistent with the use – or non-use – of "vertical" in the specification as well as with the prosecution history.

Claim 1 is not the only place in the '029 Patent which describes "an air intake opening" being cut in one of the panels.  In those other places, the term is used without reference to whether it is a "vertical" air intake opening.  (*See* col. 1, ll. 57-60; col. 3, ll. 1-3, 53-56 ("the air intake duct opening 36 is cut therein [*i.e.*, a panel]"); claim 17, col. 6, ll. 41-43 ("cutting an air intake opening in the first side panel").)   But, in those instances, there is also no reference to whether the panels are vertical or horizontal.

Figure 1, and as described in the Detailed Description of the Preferred Embodiments, also supports this construction.  There, "*intake air*" (emphasis added) is shown (and stated) as being received in the filter box and "circulated upwardly" through a furnace filter and then "moves upwardly into the bottom of the furnace."  (Col. 2, ll. 52-56.)  The air is not being described as moving in a "vertical" direction; instead, in each instance in which "vertical" is used in the '029 Patent, it is used to describe either the direction of the panels or of the strength ribs in such panels.  Further, where it is the *air* that is being described or discussed, the term used is "intake air," not "air intake."  (Abstract, "a furnace filter…for filtering intake air"; col. 1, ll. 44-47 (furnace filter for improving "filtered intake air"); col. 2, ll. 50-53 (air intake duct is positioned "for supplying intake air"), ll. 53-56 ("The intake air is shown as arrows **16** [Fig. 1].  The air **16** is received in the filter box…. The intake air **16** then moves upwardly…." (emphasis in original)); col. 3, ll. 6-12 (once the furnace is ready to be turned "on," "the intake air **16** is received through the air intake duct" (emphasis in original)).)

Finally, the prosecution history shows "vertical" relates to the orientation of the opening.  In distinguishing a prior art bag filtration system called "Kearsley," the inventors amended claim

1 to add "vertical" to modify "air intake opening in the first side panel." There, they stated "the air intake opening in the first side panel is vertical" and "the Kearsley system does not include a vertical opening in the first side panel…." (ECF No. 69-3, pages 39, 45.)

Based on the foregoing, the Court construes "a vertical air intake opening" as "a vertical opening for air intake."

### 7. *"U shaped"* **(Claims 2, 6)**

Plaintiffs propose the term be construed as "bent to resemble a shape similar to a 'U' when viewed in cross-section," to which Defendants agreed during the *Markman* hearing. Accordingly, the Court accepts such construction. (ECF No. 63-1, page 2; No. 64, page 7.)

### 8. *"S-lock channel"* **(Claim 5)**

Plaintiffs propose the term be construed as "a bent channel appearing in shape similar to an 'S' when viewed in cross-section," to which Defendants agreed during the *Markman* hearing. Accordingly, the Court accepts such construction. (ECF No. 63-1, page 2; No. 64, page 8.)

### 9. *"securing"* **(Claim 8)**

Plaintiffs propose the term be construed as "interconnecting." Defendants, however, have vacillated on the issue. Initially, Defendants proposed the term be construed as "to fasten," but failed to address the term in their opening Claim Construction Brief leading to Plaintiffs' contention that their construction should, therefore, be accepted. In Defendants' Reply (ECF No. 72, page 9), however, they argued the term does not mean "interconnecting." And, during the *Markman* hearing, Defendants stated they have no objections to Plaintiffs' construction as claim 8 is not at issue. Defendants' position is baffling on several fronts.

First, as stated above, Defendants jointly submitted the Chart and Tables – all of which included claim 8. Next, *Defendants* raised claim 8 as being at issue, albeit over a different claim

term ("right angle flanges"). Third, it is not the province of Defendants to declare such claim is not at issue when there is a dispute as to whether it is at issue. Finally, Defendants were given every opportunity to advocate their position but, ultimately, stated they have no objections. Accordingly, on this record, the Court finds Defendants do not dispute Plaintiff's construction and objections, if any, have been waived. *See Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1360 (Fed. Cir. 2004) (defendant waived right to request construction of claim where it never requested court to construe any terms in claim and never offered a construction of such claim); *Wi-LAN USA, Inc.*, 830 F.3d at 1385 (federal circuit generally supports district court's case-management authority). The term is, therefore, construed as "interconnecting."

### 10. "*assembling*" (Claim 17)

Plaintiffs propose the term "assembling" be construed as "constructing," to which Defendants stated during the *Markman* hearing they have no objection. Accordingly, the Court accepts such construction. (ECF No. 63-1, page 2; No. 64, page 10.)

### 11. "*vertical front panel*" (Claim 1)

Plaintiffs propose the term "vertical front panel" be construed as follows. The words "vertical" and "front" be given their plain and ordinary meaning, and the word "panel" be construed as a "a thin sheet of material." Defendants agree that "vertical" and "front" have "generic meanings" and propose the term "panel" be construed as a "solid flat rectangle piece," "a flat sheet without a hole or opening," or a "solid sheet." The record shows the dispute is whether a "panel" must be "solid" – that it cannot have a hole in it – as Defendants contend, or whether there is no such limitation as Plaintiffs contend.

A review of the intrinsic evidence shows no limitation as proffered by Defendants. The claim term itself, in the context of claim 1, shows no such limitation and, instead, contemplates that the front panel will be attached to other panels. Similarly, Figure 7 illustrates the attachment

of metal screws to the panels when assembling the filter box. Thus, the panels can have a hole (or holes) in it and still be a "panel." And, as stated in the specification, these panels are "typically made of thin sheet metal" but can be made of plastic or similar sheet material. (Col. 2, ll. 64-67.)

Based on the foregoing, the Court construes the word "panel" to be "a thin sheet of material." The words "vertical" and "front" require no construction.

### 12. "*vertical sides*" (Claim 1)

Plaintiffs propose "first side" and "second side" be given their plain and ordinary meaning, to which Defendants agreed during the *Markman* hearing. (ECF No. 63-1, page 3; No. 64, page 12.)

### 13. "*furnace filter rails*" (Claim 1)

Claim 1 states the filter box is comprised of "a pair of horizontal furnace filter rails…." Plaintiffs propose the term be given its plain and ordinary meaning. Defendants initially proposed the term be construed as a "pair of bars extending horizontally between supports" (ECF No. 64, p. 13) but then argued in their opening Claim Construction Brief the term be construed as "a horizontally extending sheet positioned to hold a furnace filter next to and covering the enlarged open top."[15] This is the position Defendants maintained during the *Markman* hearing, which Defendants conceded describes the use of the filter rails. As the Court understands Defendants' argument here, they propose a construction which would *define* the *position* of the rails, *i.e.*, where they are located relative to the filter box. Under such facts and circumstances, the Court finds the term requires no construction.[16]

---

[15] There are a number of problems with Defendants' construction, including that there is nothing in the intrinsic evidence to support the rails are a "sheet."

[16] Indeed, the Court questions whether Defendants' argument made during the *Markman* hearing is, in actuality, an infringement argument, *e.g.*, whether an accused device infringes if the furnace filter rails are located inside the filter

The Court recognizes that "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). But, such is not the case here. Instead, the record shows Defendants' dispute is not with the meaning or scope of the term "furnace filter rails." Accordingly, the Court declines to construe the term as Defendants request. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 804 (Fed. Cir. 1999) (court construes claim when its meaning or scope is in dispute).

### 14. "*mounted to an inside of an upper portion of the first and second side panels*" (Claim 1)

Plaintiffs propose "mounted to," "first side," "second side," and "panel" be construed as they have already argued. *See* III.B.4, 11, 12, above. Defendants propose construing the word "mounted" but the Court has already rejected allowing the parties to add to the disputed claim terms in the Chart and Tables. In addition, Defendants' construction of "set upon the inner surface of the flat rectangular piece" appears inconsistent with their other proposed constructions, *e.g.*, essentially, "mounted"/"mounted to" be construed as "set upon" or "securely placed on." For the reasons stated above, the Court construes this claim term as stated above in III.B.4, 11, and 12, above.

### 15. "*enlarged open top*" (Claim 1)

Plaintiffs propose the term "enlarged open top" be construed as follows: "enlarged" means greater in size than the air intake opening, and "open top" be given its plain and ordinary meaning. Although Defendants initially proposed a different construction, after making a few

---

box as opposed to at the top of such box. *See Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.,* 815 F.3d 1314, 1319 (Fed. Cir. 2016), *cert. denied*, 137 S. Ct. 640 (2017) ("[C]ourts should not resolve questions that do not go to claim scope, but instead go to infringement…or improper attorney argument." (citations omitted)).

comments or observations, Defendants stated they did not think the construction made any difference as the issue is what is covering the top. Thus, Defendants took no issue with Plaintiffs' construction. Accordingly, the Court deems Plaintiffs' construction to be unopposed and accepts the same. (ECF No. 63-1, page 3; No. 64, page 15.)

### 16. "*covering open top*" (Claim 1)

Claim 1 states the filter box is comprised of furnace filter rails which are "adapted for holding the furnace filter next to an enlarged open top in the filter box and *covering the opening top*." (Col. 4, ll. 55-57 (emphasis added).) Plaintiffs propose the term "covering open top" be construed with the term "open top" given its plain and ordinary meaning, and "covering" as "encompassing the length and width of the open top." Defendants propose the term be construed as "protecting or concealing uppermost part" or "positioned to protect or conceal the open top." The parties' dispute here is with the term "covering," with Defendants arguing the term should be construed such that "covering" would convey that the filter and rail assembly seals the airflow between the filter box and furnace.

First, the construction Defendants propose would not convey that which they intend. Next, nothing in the claim language supports Defendants' construction. Finally, the description of the filter box shows "covering" does not mean to "protect" or "seal" the open top of the filter box. Here, the description refers to the furnace filter as being "properly seated" inside the filter box and covering the open top. (Col. 3, ll. 6-9.) The air is described as being received in the filter box and then circulated upwards through the furnace filter and into the bottom of the furnace. No sealing or protection is expressed or implied by such descriptions. On the contrary, the language of the claim and specification support Plaintiffs' construction.

Accordingly, the Court construes the term "covering open top" with the term "open top" be given its plain and ordinary meaning, and "covering" as "encompassing the length and width of the open top."

### 17. "*U shaped air filter rails*" (Claim 2)

Plaintiffs propose the term "*U shaped* air filter rails" (emphasis added) be construed consistent with "U shaped" ("bent to resemble a shape similar to a 'U' when viewed in cross-section"), to which Defendants do not object. As to "air filter rails," Plaintiffs assert the words should be given their plain and ordinary meaning. Although Defendants initially proposed a construction for such term, ultimately (during the *Markman* hearing) they stated they do not object to Plaintiffs' construction. Accordingly, Plaintiffs' construction is accepted. (ECF No. 63-1, page 3; No. 64, page 17.)

### 18. "*top of the front panel*" (Claim 3)

As to this term, Plaintiffs propose "top" and "front" be given their plain and ordinary meaning, and (as stated in III.B.11, above) "panel" be construed as "a thin sheet of material." During the *Markman* hearing, Defendants stated they do not have a problem with giving "top" and "front" their plain and ordinary meaning. This leaves only the word "panel" to be construed, which the Court has at III.B.11 above.

### 19. "*top panel*" (Claim 4)

Plaintiffs propose the word "top" be given its plain and ordinary meaning, to which Defendants stated in the *Markman* hearing that they do not object. As for "panel," the Court has construed that word at III.B.11 above.

### 20. "*right angle flanges*" (Claims 6, 8, 9)

Plaintiffs propose "right angle flanges" be given their plain and ordinary meaning, to which Defendants agreed in the *Markman* hearing. Accordingly, as there is no dispute, this term requires no construction.

### 21. *Method steps need not be performed in sequence* (Claims 17-18, 20)

The parties' dispute here is whether the method steps are to be performed in sequence. Plaintiffs assert that the steps recite no order and the specification does not follow the sequence of the six steps in claim 17. Defendants contend that because the panels snap together, the four side panels must be assembled first before the bottom panel is attached. But, that is not the issue Defendants raised, *i.e.,* whether steps "one" and "two" (putting together the two side, front, and back panels) must be completed before step "three."[17] Instead, Defendants raised whether the steps in claim 17 must be performed in sequence, *i.e.,* step one, then step two, then step three, etc.

Generally, "'[u]nless the steps of a method actually recite an order, the steps are not ordinarily construed to require one.'" *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003) (citing *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342-43 (Fed. Cir. 2001)). However, "if grammar, logic, the specification, or the prosecution history require[s] the steps to be performed sequentially, then the claims are so limited." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1309 (Fed. Cir. 2014), overruled on other grounds by *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). To make this determination, courts may engage in a two-part test. First, the court "look[s] to the claim language to determine if, as a matter of logic or grammar, [the steps] must be performed in the order written." *Altiris, Inc.,* 318

---

[17] Claim 17 does not identify the steps as such, *i.e.,* "one," "two," "three," etc. The Court uses this nomenclature solely for identifying the order in which the steps are listed in claim 17, and not as any indication they must performed in that order.

F.3d at 1369. "If not, we next look to the rest of the specification to determine whether *it* 'directly or implicitly requires such a narrow construction.'" *Altiris, Inc.,* 318 F.3d at 1370 (emphasis in original) (citing *Interactive Gift*, 256 F.3d at 1343).

In the case at hand, the intrinsic evidence does not show the method steps must be performed in the order stated.[18] The Court starts with the claim language. There, no order is recited in claim 17. Further, there is nothing to show the side panels could not be attached to the back panel (step two) before the front panel is attached to the side panels (step one), *i.e.*, that step two could not be completed before step one. The language neither grammatically nor logically requires the bottom panel to be attached *after* the four panels are put together in any particular order. Similarly, the claim language neither grammatically nor logically requires the air intake opening to be cut after the panels are attached or that the furnace filter rails are mounted to the side panels after all panels are put together (*i.e.*, the completion of steps one, two, *and* three).

As for the specification, it too neither directly nor implicitly requires a construction that the method steps of claim 17 be performed in the order written. In the written description of the preferred embodiments, the following order is indicated:

(i)     the position of the air intake duct is measured and the air intake duct opening is cut (col. 3, ll. 53-56);

(ii)    the first and second side panels are attached to the front panel, then the back panel is attached (col. 3, ll. 58-63);

(iii)   the top panel is attached to the side panels (col. 3, ll. 66-67; col. 4, ll. 1-2);

(iv)    the furnace filter door is attached (col. 4., ll. 6-8);

(v)     the bottom panel is attached (col. 4, ll. 16-21); and

---

[18] The issue here is not, for example, whether the filter box must be assembled before it may be mounted next to the intake air opening in the furnace, *i.e.*, that step six must be taken last. If that were the case, the Court may reach a different conclusion.

      (vi)    the furnace filter rails are attached (col. 4, ll. 22-26).

As in *Altiris, Inc.*, there is no statement that the order is important, no disclaimer of any other order of steps, and no prosecution history which has been provided to the court indicating a surrender of any other order of steps. Accordingly, the Court finds the steps in claim 17 are not required to be performed in the order it is written.

Finally, Defendants initially raised claims 18 and 20 as disputed but presented no argument concerning these claims. Therefore, the Court deems any dispute over these claims to be abandoned.

## IV.    CONCLUSION

For the foregoing reasons, the Court construes the '029 Patent as set forth above.

DATED this 12th day of January, 2018.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge